# Richmond

HALLIE GOAD REA, ADMINISTRATRIX OF THE ESTATE OF LUTHER FRANKLIN REA, DECEASED v. WOODROW W. FORD.

January 21, 1957.

Record No. 4592.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

W.. C. Pender and Edwin B. Meade (Pender, Coward & Boswell and Meade, Talbott & Tate, on brief), for the plaintiff in error.

Edward L. Breeden, Jr. (James A. Howard and Breeden, Howard & MacMillan, on brief), for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

[■] This litigation arises out of an industrial accident which occurred on March 2, 1954, during the construction of a high school building in the City of South Norfolk. John W. Daniel & Company, Inc., hereinafter referred to as Daniel, the principal contractor on the project, rented from Woodrow W. Ford a crane with its operator and helper for the purpose of hoisting in place certain steel trusses. During the operation of the crane in this work a truss fell, killing Luther Franklin Rea, an employee of Daniel.

Rea's administratrix filed an action at law for damages for his wrongful death against Ford, alleging that the death of the decedent was caused by the negligence of Ford in that the crane and its equipment furnished by him were defective and had been operated in a negligent manner by a servant of Ford. There was a trial before a jury and at the conclusion of the plaintiff's evidence the court struck the evidence on the ground that the operation and the hazards incident thereto by Daniel and Ford were within the purview of the Workmen's Compensation Act; that the plaintiff's exclusive remedy was under such Act, and that the present common-law action could not be maintained. To review the judgment entered pursuant to that ruling the present writ was allowed.

The facts which were developed by the plaintiff's evidence are without conflict and may be stated thus:

In the erection of the steel work for the building it was necessary that several horizontal, fabricated steel trusses, each about 90 feet long and weighing from 12 to 15 tons, be raised and attached at each end to the top of 30-foot steel columns. Daniel's equipment on the job was not capable of lifting these trusses and for that purpose it rented from Ford a crane and its crew, at $11.50 per hour. The crane crew consisted of an operator, Wilson, and a helper, Calhoun. The crane and its crew went to the site on February 25, 1954, and were

placed under the direction and control of Arthur H. Jurgensen, Daniel's superintendent. Jurgenson and Rea, who worked under him, gave the crane crew directions as to what truss was to be raised, when it was to be raised, and where it was to be placed. While the members of the crane crew were on the payroll of Ford, he gave them no directions as to how, when and where they should work. Indeed, Ford was not present during the work, nor did he have there any superintendent, servant, or employee other than the members of the crane crew.

The crane was equipped with the usual boom and steel rope. A sling or "spreader" was placed around the truss and hooked to the end of the cable on the crane. This sling was made with a wire cable procured from Ford's warehouse and clamps furnished by Daniel. It was assembled under the direction of Jurgensen by Rea and a member of the crane crew.

Two trusses were raised and put in place on February 25 and 26. The accident with which we are concerned occurred while a truss was being hoisted and placed in position on March 2. On that occasion the sling was placed around the truss and tested by Rea. While the truss was being raised by the crane, Rea stood on one end of the truss while Casey, a fellow employee, stood on the other. It was the duty of these employees to bolt the respective ends of the truss to the upright columns when the truss came into a proper position. To facilitate the swinging of the truss into a proper position a "tag" line, manned by an employee of Daniel, was fastened to each end of the truss.

It is not clear from the evidence just how and why the accident occurred. The witnesses agree that, as was customary, the truss was raised above the ends of the columns to which it was to be fastened. Rea signaled to the operator to lower the truss. In doing so, one end of the truss struck the top of one of the columns, the sling or "spreader" broke, and the truss fell to the floor. Rea, who was standing on the truss, was thrown to the floor and killed.

There is evidence which tended to show that during the lowering operation the crane did not operate smoothly but "jerked." Whether this was due to the negligence of the operator or to a defect in the crane, and if so, whether such negligence or defect caused the accident, is not clearly shown in the evidence. Wilson, the operator of the crane, was not called as a witness for the plaintiff, nor did he testify for the defendant, who, under the court's ruling, was not re-

quired to put on any evidence.

The sufficiency of the plaintiff's evidence as to the negligence of the defendant was challenged in the motion to strike but not passed upon by the trial court. We, too, do not reach that question. For other reasons we conclude that the plaintiff's suit at law cannot be maintained.

It was stipulated that the decedent's widow, Hallie Goad Rea, had asserted her claim for compensation under the Workmen's Compensation Act against her husband's employer, Daniel, and its insurance carrier, Hartford Accident & Indemnity Company, and that the Industrial Commission had entered an award in her favor, from which no appeal was taken. It further appeared that Ford had accepted and complied with the Act.

The present common-law action was brought under Code, § 65-38, for the benefit of the insurance carrier and the decedent's estate. The pertinent portion of that section reads:

"The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any *other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such *other party*. * * * Any amount collected by the employer under the provisions of this section in excess of the amount paid by the employer or for which he is liable shall be held by the employer for the benefit of the injured employee or other person entitled thereto, less such amounts as are paid by the employer for reasonable expenses and attorney's fees. * * *" (Italics supplied.)

Code, § 65-99, provides: "Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified."

Code, § 65-37, provides: "The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other

rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

The critical question here is whether the defendant, Ford, is an "other party" within the meaning of section 65-38, read in connection with section 65-99. We hold that he is not under the principles laid down in *Feitig* v. *Chalkley*, 185 Va. 96, 38 S. E. 2d 73, and *Sykes, Adm'x.*, v. *Stone & Webster Engineering Corp.*, 186 Va. 116, 41 S. E. 2d 469.

In the *Feitig* case we held that a fellow employee is not an "other party" within the meaning of section 65-38, and consequently is not subject to an action at law for damages for injury to or death of a fellow servant. In discussing the question we pointed out that, "When the theory, the history and the broad purpose of the act are considered," an " 'other party,' " as used in section 65-38, "refers exclusively" to one who is a stranger to the employment and the work and does not include one who has accepted the Act and is within the express terms of section 65-99. 185 Va., at page 104, 38 S. E. 2d, at page 76.

This principle was reaffirmed in the *Sykes* case, in which we held that an action at law for the wrongful death of an employee of a subcontractor cannot be maintained against the principal contractor because the latter is not a stranger to the employment and the work. We there pointed out that, "If the 'other party' who can be sued refers only to those who are strangers to the employment and the work, the result would be that this defendant, the general contractor, who is no stranger to the employment and the work, cannot be sued." (186 Va., at page 121, 41 S. E. 2d, at page 471.) Continuing, we said:

"It clearly appears to be the purpose of section 20(a) [now §§ 65-26 to 65-31] to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a). At that point paragraph 5 of section 12 [now § 65-5] intervenes and the employe's right of action at common law

is preserved." 186 Va., at pages 122, 123, 41 S. E. 2d, at page 472.

It will be observed that the *Sykes* case deals with the right of an employee of a subcontractor to maintain an action at law against a principal contractor. The present case involves the converse of that proposition, namely, the right of an employee of a principal contractor to maintain an action at law against a subcontractor.

The latter question was presented in *Doane* v. *E. I. DuPont de Nemours & Co.*, 4 Cir., 209 F. 2d 921, which involved the interpretation of the Virginia Workmen's Compensation Act. The facts there are somewhat similar to those in the present case. The Texas Company had employed E. I. DuPont de Nemours & Company to remove certain tetraethyl lead sediment and sludge from a tank used by the Texas Company in its business of storing and marketing petroleum products. Certain employees of the Texas Company brought an action at law against DuPont alleging that because of the negligence of the latter in performing its work the plaintiffs were injured. It was held in the light of the principles laid down in the *Feitig* and *Sykes* cases that such action could not be maintained. The opinion points out that while the *Doane* case is the converse of the *Sykes* case, there is nothing to indicate that a workman "has a common law right of action against any *contractor or workman below him in the descending line*. The purpose of the Virginia statute as interpreted by its highest court is to limit the recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person *unless he be a stranger to the business*." (Italics supplied.) (209 F. 2d, at pages 925, 926.) We agree with that reasoning and conclusion.

In the present case Ford, the defendant, was no stranger to the business of Daniel, the principal contractor. On the contrary, in furnishing the equipment and crew for the purpose of erecting the steel structure Ford was a subcontractor engaged in an essential part of the work which the principal contractor had to do. Thus he was not an "other party" within the meaning of Code, § 65-38. Like the principal contractor, Ford was under the canopy of the Workmen's Compensation Act and not subject to an action at law for damages for injury to or death of Rea who was engaged in the same work. Code, § 65-37, *supra.*

It is argued on behalf of the administratrix that while these principles may bar her claim against Ford, arising out of the neg-

ligence of the operator of the crane, they do not bar her suit against Ford for negligence in furnishing a defective crane. We perceive no such distinction in the purpose and intent of the Workmen's Compensation Act. If Ford is not amenable to the present suit because he is not an "other party" within the meaning of Code, § 65-38, he is immune from such suit on both causes of action.

The appellant points out that in *Haw* v. *Liberty Mutual Ins. Co.,* 86 U. S. App. D. C. 86, 180 F. 2d 18, it was held that notwithstanding the fact that both the principal contractor and subcontractor had complied with the Virginia Workmen's Compensation Act, an employee of the principal contractor could maintain an action at law against the subcontractor for damages for injuries occasioned by the negligence of an employee of the latter.

The opinion is devoted mainly to the reasoning and conclusion that under the particular facts and circumstances of the case the employees of the subcontractor were not the loaned employees of the principal contractor. With that holding we agree.

But we do not agree with the holding that the accident was not an industrial risk designed to be covered by our Workmen's Compensation Act. In the brief discussion of that phase of the case the opinion fails to take into consideration what we said in the *Feitig* and *Sykes* cases as to the purpose and coverage of the Act. Indeed, these cases are not discussed at all. Compare the later *Doane* case in which the opposite conclusion was reached after a careful consideration of the *Feitig* and *Sykes* cases.

The appellant also relies on *Kelley* v. *Summers,* 10 Cir., 210 F. 2d 665, in which the right of action by an employee of a general contractor against a subcontractor was sustained. That case involved the provisions of the Texas Workmen's Compensation Act which, as construed by the courts of that State, permit such an action to be brought. See also, *Dillman* v. *John Diebold & Sons Stone Co.,* 241 Ky. 631, 44 S. W. 2d 581, discussed but not followed in the *Doane* case.

The view we have taken of the matter makes it unnecessary to consider whether in the present case at the time of the accident the crane operator was the loaned employee of the principal contractor, Daniel, and the fellow servant of Rea, and if so, what effect that had upon the right of the plaintiff administratrix to maintain the present action at law.

[█] In separate assignments of error on behalf of the administratrix complaint is made that the trial court refused to permit her counsel

to participate in the trial. It is said that such refusal was prejudicial to her rights and constitutes reversible error. While the suit was brought in the name of the administratrix by counsel for the insurance carrier, under the provisions of Code, § 65-38, it was for the benefit of the administratrix as well. Consequently, she had a substantial interest in the recovery sued for and was entitled to have her counsel participate in the trial.

But the record does not bear out her contention that the trial court denied her such right and that her interests were prejudiced thereby. Mr. William C. Pender, counsel for the insurance carrier, and Mr. Edwin B. Meade, counsel for the administratrix, seem to have been quite co-operative in the taking of depositions of material witnesses before the trial. However, at the beginning of the trial both counsel stated that differences had arisen between them as to the manner in which the case should be presented on behalf of the administratrix. Mr. Meade, counsel for the administratrix, stated to the court that he recognized that Mr. Pender, counsel for the insurance carrier, "has control of the litigation," but that the administratrix had an interest in the recovery which she desired him (Meade) to protect by participating in the trial.

Just what differences had arisen between counsel for the insurance carrier and counsel for the personal representative were not, so far as the record shows, disclosed to the trial court. But inasmuch as counsel had stated that these differences existed, the trial court stated that it would be confusing for the two attorneys representing the same plaintiff to undertake to conduct her case in a different way. Hence, it said that unless they could agree on how the case should be conducted, since Mr. Pender as counsel for the insurance carrier was admittedly in "control of the litigation," Mr. Meade should participate in the trial as an "assistant" or "associate" of Mr. Pender. It is not explained how the court could have ruled otherwise. But Mr. Meade declined to participate in the trial under this arrangement. In the meanwhile counsel for the defendant had taken no part in this controversy.

It thus appears that the failure of Mr. Meade as counsel for the administratrix to participate in the trial was not occasioned by the improper ruling of the trial court. It was due entirely to the fact that counsel for the plaintiff failed or refused to compose their differences and co-operate in the presentation of the plaintiff's case.

However, if it be assumed that Mr. Meade should have been per-

mitted to participate in the trial without subordinating his position to that of Mr. Pender, there is not the slightest indication that the ruling of the trial court was in any way prejudicial to the rights of the administratrix. Under an order of this court, Mr. Meade was permitted to file a brief on behalf of the administratrix and to participate in the oral argument of the case before us. Neither in that brief, nor in the oral argument before us, nor in the record below was it pointed out how or in what manner the presentation of the case on behalf of the administratrix could have been improved upon had her personal counsel been permitted to participate in the hearing other than on the basis permitted by the trial court's ruling. In their separate briefs, on the merits, they advance the same argument.

It is elementary that in order to constitute reversible error the ruling of the trial court must be material and prejudicial to the interests of the party complaining of it. Code, § 8-487, as amended; Burks Pleading and Practice, 4th Ed., § 438, pp. 857, 858, and cases there cited. Clearly that is not the case here.

Accordingly the judgment is

*Affirmed*.