**Noy HAYNES, Appellant,**

v.

**JAMES H. CARR, INC., and Pacific Lumber Inspection Bureau, Appellees.**

**No. 13701.**

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1970.

Decided May 26, 1970.

Leonard B. Sachs, Norfolk, Va. (Kanter & Kanter, Norfolk, Va., and Allen, Allen, Allen and Allen, Richmond, Va., on the brief), for appellant.

Henry H. McVey, III, Richmond, Va. (McGuire, Woods & Battle, Richmond, Va., on the brief), for appellee James H. Carr, Inc.

Andrew W. Wood, Richmond, Va. (L. Paul Byrne and Bremner, Byrne & Baber, Richmond, Va., on the brief), for appellee Pacific Lumber Inspection Bureau.

Before SOBELOFF, BOREMAN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal raises two issues: first, whether Noy Haynes' tort action against James H. Carr Company is barred by Virginia's Workmen's Compensation Act; and second, whether the district court acquired personal jurisdiction over Pacific Lumber Inspection Bureau under Virginia's long arm statute. The district judge, applying Virginia law because jurisdiction is based on diversity of citizenship, held for Carr and the Inspection Bureau. We affirm his dismissal of the action.

I.

Haynes, a carpenter employed by Earl M. Childrey, Inc., was injured by the collapse of a roof truss on a church Childrey was constructing. Haynes received compensation for his injuries from his employer. He then brought this action against Carr, who had fabricated the truss, alleging negligence and breach of warranty. Whether Haynes has a cause of action against Carr turns on the status of Carr. If the Carr Company was solely a supplyman and a deliveryman, Haynes may sue it because it is an "other party" within the meaning of the Compensation Act [Va.Code Ann. § 65.1–41 (1968 Repl. Vol.)]. Burroughs v. Walmont, Inc., 210 Va. 98, 168 S.E.2d 107 (1969). Cf. Bristow v. Safway Steel Products, 327 F.2d 608 (4th Cir. 1964). On the other hand, Haynes' right to compensation is his only remedy, and his action against Carr is barred by other provisions of the Act [Va. Code Ann. §§ 65.1–40 and 65.1–103 (1968 Repl. Vol.)] if Carr was performing work that was part of the trade, business, or occupation of Haynes' employer. Doane v. E. I. Dupont deNemours & Co., 209 F.2d 921 (4th Cir. 1954); Bosher v. Jamerson, 207 Va. 539, 151 S.E.2d 375 (1966).

Consulting engineers, working in conjunction with the building's architect, prepared the designs and specifications for the trusses. The plans allowed the trusses to be fabricated either in a shop or at the job site. Childrey, the successful bidder for the job, subcontracted with Carr for the trusses. Carr elected to cut the lumber and drill holes for connecting devices at its shop. It then shipped the unassembled trusses to the job site. Its employees, under the supervision of its field superintendent, came to the job site, assembled the

trusses and stacked them as directed by Childrey's superintendent. Childrey's employees later placed them in the building by the use of a crane operated by another subcontractor.

The evidence disclosed that about one-third of the general contractors in the area fabricated trusses themselves, while others subcontracted the work to specialists, such as Carr. Although Childrey had not built any trusses as large as those in question, it either fabricated trusses itself or subcontracted the work, depending on whether it had sufficient carpenters available to do the job and on the relative cost of subcontracting. The district court found that the work performed by Carr was simple carpentry work, which could have been done by Childrey's employees using tools that were readily available.

Of course, if Carr had placed the trusses in the building, there would be no doubt that it was engaged in the general contractor's work. Bosher v. Jamerson, 207 Va. 539, 151 S.E.2d 375 (1966). But the fact that Carr did not place them in the building does not prove the converse to be true—that is, that it was not engaged in the general contractor's work. For even if Childrey had built the trusses, they would have been assembled and stacked on the job site just as Carr assembled and stacked them. These were integral steps in the construction of the building.

■ As the Supreme Court of Appeals, in Burroughs v. Walmont, Inc., 210 Va. 98, 99, 168 S.E.2d 107, 108 (1969), stated, "The gathering of material is of course essential to the construction of a building. So in a sense each supplier of material is engaged in the general contractor's trade, business or occupation. But a line must be drawn to determine who is an 'other party' for the purposes of the Workmen's Compensation Act." To draw this line, the district judge relied on two facts: (1) Carr, the subcontractor, was doing work embraced by the general contract at the job site, and (2) Child-

rey, the general contractor, could have done the work if it had elected not to engage a subcontractor. These facts form an adequate basis for the district judge's ultimate finding that Carr was performing the trade, business, or occupation of Childrey, the general contractor. Accordingly, he correctly concluded that Haynes' remedy was limited to the compensation provided by the Act and that he could not recover damages from Carr. Turnage v. Northern Virginia Steel Corp., 336 F.2d 837 (4th Cir. 1964); Rea's Adm'x v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957).

Haynes relies on Garrett v. Tubular Products, Inc., 176 F.Supp. 101 (E.D Va.1959) and Burroughs v. Walmont, Inc., 210 Va. 98, 168 S.E.2d 107 (1969), which held that the Compensation Act afforded no shelter to third party tort feasors who were simply supplying and delivering materials. But these cases are distinguishable, for the building materials—tubular steel and sheet rock—were beyond the competency of general contractors to fabricate, and they were not partly built or assembled at the job site.

■ Haynes' argument that the Virginia Workmen's Compensation Act is unconstitutional is foreclosed by Northern P. Ry. v. Meese, 239 U.S. 614, 620, 36 S.Ct. 223, 60 L.Ed. 467 (1916).

II.

The plans and specifications required that all lumber used in the trusses should be either No. 1 southern yellow pine or construction grade Douglas fir graded and marked to show that it would withstand a bending stress of 1500 pounds per square inch. Some of the timber bore the stamp of the Pacific Lumber Inspection Bureau. Haynes alleged that the timber used in the trusses did not meet the specifications, that the Inspection Bureau breached express and implied warranties of fitness, and that it negligently inspected and graded the timber.

The Inspection Bureau has neither a place of business nor agents in Virginia,

so Haynes caused process against it to be served on the Secretary of the Commonwealth of Virginia under the state's long arm statute and rule 4(e) of the Federal Rules of Civil Procedure. He asserts that the Bureau knew that the ultimate consumer of timber bearing its mark would rely on the integrity of the mark and the quality of the grade which it indicates. Consequently, he argues that the Bureau, by branding lumber which comes into Virginia, makes a representation in Virginia that the lumber bearing its brand is fit for the purposes for which it has been graded. Stated colloquially, Haynes says the Bureau's brand "speaks" in Virginia.

The Bureau operates a grading service for lumber mills in western United States. Its principal office is in Seattle, Washington, and it maintains branch offices in other western states. The district court held that the Bureau was not subject to service of process in Virginia. It reached this conclusion after finding the following facts:

"It [the Bureau] is a non-profit service organization. It is a 'grading agency for grading lumber for anyone that is dealing in lumber products' that cares to have its grade stamp or certification. Its operation areas are Washington, Oregon, California, British Columbia, Canada and Alaska. All of its inspectors reside within the above area. It has no agents or officers in any other areas. It has no officers, agents or employees in Virginia, nor has it graded lumber in Virginia. It does not sell or ship lumber or other goods or merchandise, nor does it have any control or interest in where lumber graded by it is sold or used. It did not and does not deal

with Carr. All its revenues arise from inspection charges. The charge is based upon the inspector's wages plus an overhead fee for carrying on the organization, termed as a per diem fee. It derives no revenues from any services performed in Virginia. It does no advertising and has sent no materials to Virginia. It has no contract to supply or furnish its services or anything else in Virginia, nor has it engaged in any course of conduct nor derived 'substantial revenues' for services performed in Virginia. It appears the only time it had an employee in Virginia was when, following the collapse of the trusses, it had an employee come to Virginia and make an investigation of the material used in the trusses. This investigation established that some of the timbers bore the inspection stamp of [the Bureau]."

The evidence also disclosed that the Bureau inspected, graded, and stamped the timbers outside of Virginia. A British Columbia wholesaler shipped them to the East Coast, and Carr arranged for delivery to his shop in Washington, D. C. Eventually, Carr brought them into Virginia for assembly at the job site.

■ Generally, the application of long arm statutes involves two steps. It is necessary to determine first whether the statute permits service of process on the nonresident defendant, and second, whether service under the statute violates the Due Process Clause of the federal constitution. This case, however, turns on the first inquiry and we do not reach the second. Virginia's long arm statute was enacted in 1964.* Except for

---

* Virginia Code Annotated § 8–81.2 (Supp. 1968) provides in part:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

  (1) Transacting any business in this State;

  (2) Contracting to supply services or things in this State;

  (3) Causing tortious injury by an act or omission in this State;

  (4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed

¶ (5), it follows verbatim the Uniform Interstate and International Procedure Act, which, in turn, borrowed from long arm statutes of Illinois, New York, and Wisconsin. See generally, Smithers, Virginia's "Long Arm" Statute: An Argument for Constitutionality of Jurisdiction over Nonresident Individuals, 51 Va.L.Rev. 712, 713 (1965). But ¶¶ (4) and (5) of the Virginia Act contain provisions not found in the "single act" statutes of some of the states.

■■ The burden of proving jurisdictional facts rests upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When, as here, a defendant allegedly caused injury in Virginia by an act or omission outside of the state, ¶ (4) of the Act requires the plaintiff to show the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." Also, when the plaintiff relies on a breach of warranty made in the sale of goods outside Virginia, ¶ (5) requires the plaintiff to prove the defendant had similar contacts within Virginia. But the uncontradicted evidence established that the Bureau does not solicit business in Virginia, and Haynes was unable to show that it engaged in any other persistent course of conduct there, or the amount of revenue it derived from inspecting timber ultimately used in the state. Thus, the evidence justified the district court's conclusion that Haynes failed to prove the jurisdictional facts required by ¶¶ (4) and (5).

Moreover, the jurisdictional requirements of ¶¶ (4) and (5) indicate that the legislature did not intend that the isolated introduction of defective goods into Virginia, standing alone, should confer jurisdiction under ¶¶ (1), (2), or (3) of the statute. Contrary to Haynes' theory, the legislature did not impliedly prescribe that a wrongful act, omission, or misrepresentation made outside the state should be considered a continuing wrong occurring within the state solely because improperly branded goods caused an injury in the state. If this had been intended, the legislature would have had no reason for enacting ¶¶ (4) and (5). In this respect these paragraphs restrict the reach of the Virginia statute more than the "single act" provision of the statutes of some other states. See Etzler v. Dille & McGuire Mfg. Co., 249 F.Supp. 1, 4 (W.D.Va. 1965); Note, The Virginia "Long Arm" Statute, 51 Va.L.Rev. 719, 749 (1965). Consequently, cases interpreting "single act" statutes, which Haynes cites, are not applicable.

Finally, jurisdiction cannot be based on the fact that an employee of the Bureau came to Virginia to inspect the broken truss. While this may be considered the transaction of business in the state within the meaning of ¶ (1), as the district court correctly observed, the cause of action did not arise from the

---

or services rendered in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered in this State; * * *.

* * * * *

"(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; provided, however, nothing contained in this chapter shall limit, restrict or otherwise affect the jurisdiction of any court of this State over foreign corporations which are subject to service of process pursuant to the provisions of any other statute."

presence of the Bureau's employee in the state for this purpose.

To reiterate, ¶¶ (1), (2), and (3) are inapplicable under the facts of this case, and the absence of statutory contacts by the Bureau in Virginia precludes jurisdiction under ¶¶ (4) and (5). The judgment is

Affirmed.