## CIRCUIT COURT OF THE CITY OF RICHMOND

J. W. Phillips & Sons Co.

v.

Lowenbrau Munchen AG. et al.

May 8, 1975

Case No. D-8191-S

By Judge Alex H. Sands, Jr.

This matter is now before the court upon demurrers filed by Philip Morris, Inc., Miller Brewing Company, and Loveland Distributing Co., Inc., and upon Lowenbrau's motion to quash.

*Demurrer*

The demurrers filed by Philip Morris, Miller, and Loveland present the single issue of whether the language of Virginia Code § 4–80.2 authorizes an injunction against these defendants and whether the jurisdiction conferred thereby can be extended to cover them.

These defendants contend that the specific language of the statute limits the Court's jurisdiction to the specific parties with the cancellation of franchise between whom the statute is concerned. If the jurisdiction of the Court is to be thus limited, the demurrers would have, of necessity, to be sustained for the statutory language confers jurisdiction "to enjoin the cancellation or termination of a franchise or agreement between a wholesaler of beer . . . and a brewery." If there be such a "franchise" in existence under the facts of the case at bar, it is between complainant and Lowenbrau, and these are the only parties thereto.

Complainant, however, contends that the defendants, Philip Morris, Inc. (Philip Morris), Miller Brewing Company (Miller), and Loveland Distributing Co., Inc. (Loveland) are necessary and indispensable parties to this proceeding and that for stated reasons, were they not joined as parties to the proceeding, the right conferred by

§ 4–80.2 would be worthless. The reason why this is true, says complainant, is that if these defendants are not joined as parties to this proceeding and thus not bound by the Court's decree, there would be nothing to prevent defendant Lowenbrau from contracting to sell to these defendants who in turn would distribute in complainant's alleged territory.

The Court finds it difficult to follow this line of reasoning, for should complainant prevail in its contention and an injunction issue as a result, the Court would certainly enjoin defendant Lowenbrau from supplying any distributors in such area as to which complainant might prove that it has been given an exclusive franchise by Lowenbrau. The last sentence of § 4–80.2(a)(2)(b) expressly confers this power upon the Court. It reads:

> In granting such an injunction, the court shall provide that no brewery, vintner or winery shall supply the customers or territory of the wholesaler through servicing said territory or customers *through other distributors or means* while the injunction is in effect. (Emphasis added.)

In view of the broad injunctive power thus given the Court, there would appear that there is no basis for fear upon complainant's part that should it prevail in its claim, defendant Lowenbrau would be able to defeat the purpose of the statute by dealing directly with defendants Philip Morris or Loveland.

For the above reasons, the demurrer as to these two defendants will be sustained.

### Motion to Quash

Defendant Lowenbrau has filed a motion to quash upon the ground that its basis of operation does bring it within the jurisdiction of this Court for purposes of valid service of process.

To be valid, the service obtained by complainant on Lowenbrau would have to qualify under Virginia Code § 8–81.2, commonly known as the "Virginia Long Arm" statute. It is further true that to so qualify, Lowenbrau's activity must be such as to fall under either subparagraph (1) or (2) of the Section. The burden is, moreover, upon complainant to establish jurisdictional facts to support its suit. *Haynes v. James H. Carr, Inc.*, 427 F.2d 700 (4th Cir. 1970).

The affidavit filed by Johann Daniel Gerstein, export manager of defendant Lowenbrau, alleges: (1) that there are in this defendant's records no correspondence, shipping documents or papers of any

kind addressed to complainant; (2) that defendant Lowenbrau has never had any contractual relations, written or oral, of any kind whatsoever with complainant; (3) that Lowenbrau has never engaged in the shipment, preparation for shipment or acceptance of any order for beer from complainant, nor has this defendant ever accepted payment from complainant for any beer, wine or beverages intended for sale in Virginia; (4) that at all times material to this action, *all* shipments of Lowenbrau beer to Hans Holterbosch, Inc., which were ultimately sold in Virginia were exclusively invoiced to and paid for by Holterbosch and consigned for delivery to a U. S. Customs broker, exclusively designated by Holterbosch; (5) that Lowenbrau has no knowledge of where the beer in any shipment will be ultimately sold by Holterbosch; (6) that Lowenbrau is not licensed or qualified to do business in Virginia, nor does it have any office, place of business, warehouse or any other facility in Virginia, nor does it have any agents or employees operating in Virginia, nor does it maintain or has it ever maintained a bank account, mailing address, telephone listing or other business facility in Virginia, nor does it have any debts owing it or any estate situated in Virginia, nor has it ever been assessed by, or paid any tax to, Virginia.[1]

The affiant, Mr. Gerstein, further outlines the procedure followed regarding shipments to the United States to be as follows:

(14) Lowenbrau used the following procedure in executing purchase orders from Holterbosch for the shipment of beer to the United States:

(a) Lowenbrau receives a purchase order from Holterbosch which designates the quantity and type of beer and the vessel and West German port to which Lowenbrau is to deliver the beer F.O.B.

(b) Lowenbrau transmits the shipping documents directly to the Irving Trust Company of New York, New York, with the express instructions to deliver them to Holterbosch upon the receipt of cash payment.

(c) Lowenbrau transmits to Holterbosch an invoice for the beer shipment.

(d) Holterbosch receives the shipping documents from the Irving Trust Company upon Holterbosch's tendering of

---

[1] These are substantially the same allegations contained in the F.A.P. affidavit filed in the case of *Whitlow v. Able, et al.,* in which a motion to dismiss upon the identical grounds as those urged in the case here involved was overruled.

cash payment to the Irving Trust Company which in turn remits payment to Lowenbrau.

(e) Lowenbrau receives payment for the beer shipment from the Irving Trust Company.

(f) Lowenbrau has never received payment from the complainant at any time whatsoever.

(15) Regarding each shipment of beer to the United States, Lowenbrau has no knowledge of where the beer in the particular shipment will be ultimately sold by Holterbosch or consumed in the United States. The designation of the vessel and particular United States port of entry is within the sole and exclusive control of Holterbosch, as the shipper and owner of the beer, once it is delivered by Lowenbrau to the vessel at the West German port F.O.B.

Defendant Lowenbrau urges that the reasoning which this Court applied in *Whitlow*, which involved a tort (§ 8–81.2(4)) is not applicable to the case at bar involving an alleged breach of contract and argues that the "consistent course of conduct and substantial revenue" criteria of subsection (4) is not applicable to cases involving nontort claims. The suggested distinction is not considered sound. We are actually concerned with the question of whether the acts of the nonresident constitute such "minimum contacts" as to measure up to the criteria set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95 (1945). In commenting upon the trend toward a liberal interpretation of the criteria looked to justify jurisdiction over nonresidents, the Court in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 2 L. Ed. 2d 223, 226 (1957), says:

Looking back over this long history of litigation, a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent.

The true test to be applied is thus stated in *Kolbe, Inc. v. Chromodern*, 211 Va. 736 (1971), at page 740:

It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in *some purposeful activity* in this state to the extent permissible under the due process clause. (Emphasis added.)

Were the Lowenbrau affidavits the only material before the Court, no finding of "minimum contacts" could be justified and Lowenbrau's motion to quash would have to be sustained. But complainant has offered an affidavit alleging facts (as distinguished from conclusions) directly in conflict with facts alleged in the Lowenbrau affidavits.

Edward E. Phillips, president of complainant corporation, alleges, *inter alia*:

(1) That in 1963, J. W. Phillips became the authorized and exclusive licensed wholesale distributor for the City of Petersburg and the surrounding counties of beer and related products manufactured, sold and shipped by Lowenbrau.

(2) That Loveland was, at the time, the distributor for Lowenbrau in the Richmond area.

(3) That sometime early in 1972, complainant took over Loveland's distributorship, bought out all of Loveland's inventory of Lowenbrau's beer, and collected Loveland's accumulation of Lowenbrau's empty beer barrels and shipped them back to Lowenbrau at no cost to such company.

(4) That complainant took over and assumed all of Loveland's pending orders for beer from Lowenbrau and received beer filling such orders directly from Lowenbrau at the (U. S.) port of entry.

(5) Upon receiving orders from complainant through Holterbosch, Lowenbrau would prepare the beer for shipment and ship the order direct to complainant for receipt at the most convenient port of entry where complainant would collect the beer and pay the wharfage charges. Complainant would then advise Holterbosch that the shipment had arrived.

(6) Holterbosch would then bill complainant who would pay the bill to Holterbosch.

It must be remembered, as stated above, that the burden rests upon complainant to establish the existence of the Court's jurisdiction, and it is doubtful if this affidavit, standing alone, in view of the conflicting affidavits, would carry this burden. There are, however, other facts which not only support to some degree the allegations in the Phillips affidavit, but which, when considered in conjunction with the affidavit, would be sufficient to carry this burden, at least at this stage of the proceeding.

Virginia Code § 4–7(h)[2] not only confers upon the Virginia Alcoholic Beverage Control Board (ABC Board) the power, but imposes upon the Board the duty to approve the nature, form and capacity of all beer containers, as well as to prescribe the form and contents of all labels upon such containers before the product can be put on the market in the State.

But the duty is not confined to the Board for § 21 of the Regulations of the ABC Board[3] imposes upon all potential sellers of alcoholic beverages in the State the duty to procure the approval by the Board of the product before it can be placed upon the market.

This puts Lowenbrau in the position of having had its containers and labels approved[4] before the beer was legally put on the market. While this does not constitute conclusive evidence that the foreign corporation has the requisite "minimum contacts" with the State, it is evidence which the Court should consider on the issue of jurisdiction of the courts of the state over foreign corporations. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). In the absence of evidence to the contrary, it will be presumed that the sale of Lowenbrau beer in the State is being legally, rather than illegally, conducted.[5]

There is yet another consideration to which the Court should direct its attention. There appears to be two ways in which Lowenbrau beer might have reached Virginia markets. Under one method, Holterbosch, which unlike HICA, the middleman in *Whitlow v. Able*, had warehouse facilities, would receive shipments direct from Lowenbrau (F.O.B. port of departure) which it stored and subsequently distributed to local distributors. Under the other method, Holter-

---

[2] "§ 4–7. *Functions, duties and powers of Board.* — The functions, duties and powers of the Board shall be as follows . . . . " (h) To determine the nature, form and capacity of all packages to be used for containing alcoholic beverages to be kept or sold under this chapter and to prescribe the form and contents of all labels and seals to be placed thereon . . . ."

[3] This section reads in pertinent part: "the prior approval of the Board must be obtained as to the beer or beverage and the label on the container" before the same can be sold in the State.

[4] By whom the application was made is unimportant.

[5] It will be noted that the statement of the ABC Board attached to counsel's letter of April 28, 1975, merely says that their records do not disclose that *Lowenbrau* ever sought approval of its product. It does not say that the product was never approved, and as stated (footnote 4), it is immaterial to the issue at hand *who* applied for approval.

bosch would order a shipment from Lowenbrau, take title F.O.B. at Bremen, Germany, or other port of departure, and direct that the order be shipped direct to the United States port at which place the ultimate recipient would take possession. All evidence presently before the Court indicates that as to sales in Virginia, the second method was used.

While technically the title passed to Holterbosch under both methods, yet under the second method, Holterbosch was actually little more than a broker. While Lowenbrau strenuously contends having made delivery to the port of departure, it had neither knowledge of nor interest in destination of the shipment after that point. While it might well be true that Lowenbrau might be ignorant of the ultimate destination of its beer shipments consigned for delivery to Holterbosch at Holterbosch's customary port of receipt, it is quite doubtful to the Court that Lowenbrau was so naive as not to be aware that shipment consigned to Norfolk would be distributed and sold in Virginia and that a substantial portion of the revenue from Holterbosch's United States sales were generated in Virginia.

An additional consideration in this connection (the same one which presented itself in *Whitlow*) is that while Lowenbrau sold F.O.B. at port of departure, the record is silent as to who handled the shipping arrangements. It is apparent that Lowenbrau packaged the order for shipment, but who handled the paper transactions at the port of departure? There is no evidence that Holterbosch had any representative at the port in Bremen. The inference forced upon the court in the absence of contrary evidence is that Lowenbrau, which handled the packing, also handled the shipping details; and if so, was thoroughly cognizant of the port of destination of each such shipment.

### Conclusion

From the foregoing, it is the belief of the Court and it is so held that based upon the material before the Court at this time, defendant Lowenbrau had sufficient "minimum contacts" in Virginia at the time of the institution of this proceeding that the maintenance of the suit in Virginia does not offend traditional notions of fair play and substantial justice. The defendant Lowenbrau's motion to quash is, therefore, denied.

The demurrers filed by Philip Morris, Miller and Loveland are, for reasons heretofore given, sustained.