PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Lemons, JJ., and Stephenson, S.J.

LISA C. PECK, ADMINISTRATRIX OF THE ESTATE OF
 WILLIAM R. PECK, JR., DECEASED
                                        OPINION BY
v.  Record No. 002255    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        September 14, 2001
SAFWAY STEEL PRODUCTS, INC.


        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Randall G. Johnson, Judge

    In this appeal, we determine whether the trial court erred
in ruling that the plaintiff's action is barred by Code § 65.2-
307, the exclusivity provision of the Virginia Workers'
Compensation Act, Code § 65.2-100 et seq. (the Act).

                                I

    Lisa C. Peck, Administratrix of the Estate of William R.
Peck, Jr., deceased (Plaintiff), filed a wrongful death action
against Safway Steel Products, Inc. (Safway), alleging that her
decedent's death was proximately caused by Safway's negligence
and breach of warranties.  Safway filed a plea in bar, alleging
that the Plaintiff's action is precluded by the exclusive remedy
under the Act.  The trial court sustained Safway's plea and
dismissed the Plaintiff's action.  We awarded the Plaintiff this
appeal.

                                II

    The facts are undisputed.  On November 25, 1997, William R.
Peck, Jr., while in the employ of White Construction Company

(White), was killed when he fell from scaffolding on which he was working.  The Plaintiff and her two daughters applied for and received workers' compensation benefits from White and its insurer.

At the time of the accident, White was the general contractor on a project to repair and replace brick masonry on the exterior of Sanger Hall on the campus of the Medical College of Virginia.  Sanger Hall is a 12-story building owned by Virginia Commonwealth University (VCU).

Pursuant to its contract with VCU, White agreed to "provide and pay for all material, labor, tools, equipment . . . and other services or facilities of every nature whatsoever necessary to execute completely and deliver the Work within the specified time."  White had discretion regarding the means and method of completing the contracted work.

White engaged Safway to supply and install scaffolding for the project.  The subcontract between White and Safway provided the following:

> THE WORK:  Subcontractor shall furnish all supervision, labor, materials, tools, equipment and services, permits, fees, and taxes required by the Contract Documents in the following division(s)/section(s) together with all work reasonably inferable therefrom: – Furnish, engineer and erect all scaffolding per contract document requirements including stair tower to roof and equipment hoist.  Erect first two decks for two months.  Erect remaining scaffolding to roof for an additional two months.  There shall be two working

2

deck levels available at all times and an additional non loaded deck for logistics purposes.  There are to be twelve additional deck moves as requested by contractor.  Rental time starts when scaffolding is complete and ready for use.

The size and height of the scaffolding system required Safway to tie the scaffolding to the building.  This was accomplished by drilling into the brick walls and installing anchors.  The scaffolding system, however, could support only two working deck levels at one time.  Therefore, as work progressed, White called on Safway to remove the walk boards, brackets, and other equipment comprising the working decks and to reassemble them at different locations within the system. All deck moves were performed at White's direction, and Safway provided all labor for the moves.  Although the subcontract originally called for Safway to provide on-site labor for twelve deck moves, problems discovered at the site required change orders to cover additional deck moves.  Including the extra work required by the change orders, Safway performed over 5,000 man-hours of labor in erecting, modifying, and dismantling the scaffolding system.

### III

Code § 65.2-307 provides that the rights and remedies granted under the Act "shall exclude all other rights and remedies" of an employee or his estate at common law or otherwise.  The only exception to this exclusivity provision is

set forth in Code § 65.2-309(A), which states, in pertinent part, that an employee or his personal representative can maintain an action at law against the person who caused the injury, provided such person is an "other party."  We have said that, to be an "other party," a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured.  See, e.g., Pfeifer v. Krauss Construction Co., 262 Va. 262, 267, 546 S.E.2d 717, 719 (2001); Fowler v. International Cleaning Service, 260 Va. 421, 428, 537 S.E.2d 312, 315 (2000).  Thus, in the present case, we must determine whether the trial court correctly ruled that Safway was engaged in White's trade, occupation, or business, thereby barring the Plaintiff's action.

The Plaintiff contends that Safway was a stranger to White's work and, therefore, an "other party" subject to suit. The Plaintiff asserts that, in leasing, delivering, and installing scaffolding, Safway's conduct was merely "an act of delivery by [a] subcontractor and is not tantamount to being engaged in the trade, business or occupation of the general contractor."  The Plaintiff relies on a number of cases in which we have held that a subcontractor that merely delivers materials or equipment to a job site is not engaged in the general contractor's work.  See, e.g., Yancey v. JTE Constructors, Inc., 252 Va. 42, 471 S.E.2d 473 (1996); Hipp v. Sadler Materials

4

Corp., 211 Va. 710, 180 S.E.2d 501 (1971); Burroughs v. Walmont, 210 Va. 98, 168 S.E.2d 107 (1969).

In Burroughs, the plaintiff, an employee of a trucking company that delivered plasterboard to a construction site, was injured while carrying the materials into one of the houses being constructed by the general contractor. 210 Va. at 99, 168 S.E.2d at 108. The trucking company had agreed to deliver and stack specified quantities of the plasterboard in the rooms in the various houses under construction. Id. at 98, 168 S.E.2d at 108. The plaintiff sued the general contractor to recover for his injuries. We held that "the stacking of [plasterboard] in the several rooms constituted the final act of delivery, not an act of construction." Id. at 100, 168 S.E.2d at 108. Consequently, the plaintiff was not engaged in the general contractor's trade, business, or occupation, and, therefore, the general contractor was an "other party" and subject to being sued. Id., 168 S.E.2d at 109.

In Hipp, the plaintiff was injured by an employee of Sadler Materials Corporation (Sadler), a subcontractor engaged to furnish and pour concrete at a job site. The plaintiff was an employee of another subcontractor and was injured when struck by a concrete truck. 211 Va. at 710, 180 S.E.2d at 501. We held that the plaintiff could maintain an action against Sadler. In so holding, we explained that "Sadler was required only to

5

deliver concrete where directed, not to spread or finish the concrete," and that, in performing Sadler's obligation, its employee was performing "the final act of delivery, not an act of construction constituting the trade, business or occupation of the general contractor." Id. at 711, 180 S.E.2d at 502.

Finally, in Yancey, a general contractor was engaged by the Virginia Department of Transportation to design and install a sound barrier along an interstate highway. The general contractor engaged a subcontractor to design, manufacture, and deliver concrete wall panels to the job site. 252 Va. at 43, 471 S.E.2d at 474. The subcontract also required the subcontractor to provide on-site patching for materials delivered in a damaged condition. Id. at 44, 471 S.E.2d at 475. The plaintiff, an employee of the subcontractor, was injured while he was inspecting one of the panels for any damage. Id. at 43, 471 S.E.2d at 474. We held that the plaintiff was not engaged in the general contractor's trade, business, or occupation when he was injured. In so holding, we concluded that the plaintiff's inspection and patching activities "were the final acts of delivery required by the contract." Id. at 45, 471 S.E.2d at 475.

Safway contends, on the other hand, that, under the facts in the present case, it was not a stranger to White's trade, occupation, or business. Thus, it was not an "other party"

6

subject to being sued.  Safway relies primarily upon our holding in Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957).

In Rea, a general contractor was engaged to construct a high school building.  The general contractor rented from Woodrow W. Ford a crane, an operator, and a helper to hoist into place certain steel trusses necessary for the building's construction.  198 Va. at 713, 96 S.E.2d at 93.  The trusses were fastened to the structure by the general contractor's employees.  While the crane operator was using the crane to position a truss, the truss fell, killing Rea, an employee of the general contractor.  Id. at 714, 96 S.E.2d at 93-94.  Rea's widow and personal representative brought a wrongful death action against Ford.

We held, in Rea, that Ford was not a stranger to the general contractor's business, and, therefore, Rea's personal representative was precluded from suing Ford.  We explained that, "in furnishing the equipment and crew for the purpose of erecting the steel structure[,] Ford was a subcontractor engaged in an essential part of the work which the principal contractor had to do."  Id. at 717, 96 S.E.2d at 96.

In the present case, we reject the Plaintiff's contention that Safway was just a supplier of materials.  To the contrary, we think Safway's duties extended well beyond mere delivery. Safway's contract with White required it to design and erect a

7

massive, complex, 14-level scaffolding system, which included an equipment and materials hoist and a stair tower to the roof of the building. Additionally, Safway was required to provide two working deck levels at all times. Safway, in fulfilling its contractual obligations, including those imposed by change orders, performed 16 full deck moves and 13 half deck moves. In erecting, modifying, and dismantling the scaffolding system, Safway provided over 5,000 man-hours of labor. Clearly, Safway was engaged in an essential part of the work that White was required to perform under its contract with VCU.

Thus, we hold that Safway is not an "other party" under the Act. Therefore, the trial court properly ruled that the Plaintiff is precluded from maintaining a wrongful death action against Safway.

Accordingly, we will affirm the trial court's judgment.

Affirmed.

JUSTICE LACY, with whom JUSTICE LEMONS joins, concurring.

This case involves the application of § 65.2-307, the exclusivity provision of the Virginia Workers' Compensation Act, Code §§ 65.2-100 et seq. (the Act). Under that provision, an injured employee is limited to the remedies of the Act unless the injury sustained resulted from the actions of an "other party," that is, one who was not performing the trade, business, or occupation of the employee's employer. Feitig v. Chalkley,

8

185 Va. 96, 99, 38 S.E.2d 73, 74 (1946); Code § 65.2-309(A).

The question which must be resolved then is whether the actions of Safway Steel Products, Inc. (Safway), the defendant in this personal injury action, constituted part of the trade, business, or occupation of White Construction Company (White), the injured party's employer. If so, the injured employee's estate is limited to the remedies provided in the Act.

The facts of this case, like those in most of the cases that come before us, do not fit neatly into a fact pattern addressed in a prior case. I agree that Safway's activities in this case go beyond those of delivery. In those cases in which we found the activity causing the injury to be delivery only, and thus not covered under the exclusivity provision of the Act, the activities were limited to delivery and were not the doing of construction. See, e.g., Burroughs v. Walmont, Inc., 210 Va. 98, 100, 168 S.E.2d 107, 108-09 (1969). Here, although the scaffolding was not incorporated into the construction by the general contractor, and Safway's employees were not under the supervision and control of the general contractor, Safway's continuing presence on the project performing tasks necessary to allow the general contractor's employees to carry out their work, extends beyond the act of delivery and distinguishes Safway from other entities which we have concluded were engaged in delivery of material or tools. However, the fact that

9

Safway's activities were not limited to acts of delivery is insufficient to support the affirmative conclusion that such activities constitute the trade, business, or occupation of White, the general contractor.

The majority bases its conclusion that the work done by Safeway was "an essential part of the work of the general contractor" and, therefore, that Safway was not an "other party," on the following criteria: (1) Safway's contract required it to design and erect a complex scaffolding system including two working decks at all times; (2) numerous deck moves were required; and (3) Safway performed over 5,000 man-hours of work on the project. This recitation of activities describes the work Safway did, but, it does not, in my opinion, provide any rationale or explain why or how this work was part of the trade, business, or occupation of the general contractor.

The quantity or complexity of the work performed is not the salient factor in determining whether an entity is an "other party" for purposes of Code § 65.2-307. Nor are activities which may be essential to the work of the general contractor necessarily activities which are part of the general contractor's work. See, e.g., Stone v. Door-Man Manufacturing Co., 260 Va. 406, 413, 537 S.E.2d 305, 308 (2000) (stating that a manufacturer needs a plant, but that constructing a plant does not make construction the manufacturer's business); Burroughs,

10

210 Va. at 99-100, 168 S.E.2d at 108 (gathering material essential for construction of building but does not make material delivery part of construction). Rather the analysis must focus on the nature of the work in question as it relates to the trade, business, or occupation of the general contractor.

This required analysis is based on the underlying rationale for the Act and the exclusivity provision. An employee subject to the Act does not lose his common-law right of action against a stranger to the business, an "other party," "for the reason that, though the accident may arise out of and in the course of the employment, the dominant cause of the accident is not inherent in the business and is not a loss which the act contemplates that the industry should ultimately bear." Feitig, 185 Va. at 99, 38 S.E.2d at 74 (emphasis added).

An example of the application of this rationale is seen in Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957). In that case, a general contractor contracted to build a school building for the city of Norfolk. In constructing the building, the general contractor was required to hoist certain steel trusses and attach them to the top of 30-foot high columns. Raising the trusses was work required of the general contractor, and, since the contractor's "equipment on the job was not capable of lifting these trusses," the general contractor had to rent a crane and crew to perform this work. 198 Va. at 713, 96 S.E.2d

11

at 93.  An employee of the general contractor was killed when a truss, dislodged by the crane, fell on him.

The work of the general contractor was to construct the building and, to do so, it had to raise the trusses.  Thus, in performing this work, the subcontractor in Rea was "engaged in an essential part of the work which the principal contractor had to do."  Id. at 717, 96 S.E.2d at 96.  The risk of injury from this work was inherent in the work of the general contractor and one borne as a cost of doing business by the general contractor.

In this case, the business of the general contractor White was to repair and replace brick masonry.  White's vice president and project manager, Johnny L. Powers, testified that White did not have the technical capacity to install multi-level scaffolding of the type provided by Safway.  However, when asked if White could have performed its work without the scaffolding provided by Safway, Powers testified that, in several instances during the project, Safway did not have scaffold decks in areas in which White's workers needed to work and White constructed its own system "like window washers use on [a] high-rise" to provide access to the brick wall above ground level.  Thus, while White did not erect the type of scaffolding provided by Safway, White considered access to its renovation activities in areas above ground level as a part of its work and, in fact, on occasion, provided a system for that purpose.  The risk of

injury from providing such access was inherent in the work of the general contractor and, accordingly, was a cost of doing business by White.

Providing access to the brick masonry was part of White's work and, when Safway provided such access through a system of scaffolding, it was performing part of the trade, business, and occupation of White.  Therefore, Peck is limited to the remedies available under the Workers' Compensation Act for injuries suffered as a result of the negligence of Safway's employees.

For these reasons, I concur in the result reached by the majority.