JUSTICE LACY,
with whom JUSTICE LEMONS joins, concurring.
This case involves the application of § 65.2-307, the exclusivity provision of the Virginia Workers’ Compensation Act, Code §§ 65.2-100 et seq. (the Act). Under that provision, an injured employee is limited to the remedies of the Act unless the injury sustained resulted from the actions of an “other party,” that is, one who was not performing the trade, business, or occupation of the employee’s employer. Feitig v. Chalkley, 185 Va. 96, 99, 38 S.E.2d 73, 74 (1946); Code § 65.2-309(A). The question which must be resolved then is whether the actions of Safway Steel Products, Inc. (Safway), the defendant in this personal injury action, constituted part of the trade, business, or occupation of White Construction Company (White), the injured party’s employer. If so, the injured employee’s estate is limited to the remedies provided in the Act.
The facts of this case, like those in most of the cases that come before us, do not fit neatly into a fact pattern addressed in a prior case. I agree that Safway’s activities in this case go beyond those of delivery. In those cases in which we found the activity causing the injury to be delivery only, and thus not covered under the exclusivity provision of the Act, the activities were limited to delivery and were not the doing of construction. See, e.g., Burroughs v. Walmont, Inc., 210 Va. 98, 100, 168 S.E.2d 107, 108-09 (1969). Here, although the scaffolding was not incorporated into the construction by the general contractor, and Safway’s employees were not under the supervision and control of the general contractor, Safway’s continuing presence on the project performing tasks necessary to allow the general contractor’s employees to carry out their work, extends beyond the act of *529 delivery and distinguishes Safway from other entities which we have concluded were engaged in delivery of material or tools. However, the fact that Safway’s activities were not limited to acts of delivery is insufficient to support the affirmative conclusion that such activities constitute the trade, business, or occupation of White, the general contractor.
The majority bases its conclusion that the work done by Safeway was “an essential part of the work of the general contractor” and, therefore, that Safway was not an “other party,” on the following criteria: (1) Safway’s contract required it to design and erect a complex scaffolding system including two working decks at all times; (2) numerous deck moves were required; and (3) Safway performed over 5,000 man-hours of work on the project. This recitation of activities describes the work Safway did, but, it does not, in my opinion, provide any rationale or explain why or how this work was part of the trade, business, or occupation of the general contractor.
The quantity or complexity of the work performed is not the salient factor in determining whether an entity is an “other party” for purposes of Code § 65.2-307. Nor are activities which may be essential to the work of the general contractor necessarily activities which are part of the general contractor’s work. See, e.g., Stone v. Door-Man Manufacturing Co., 260 Va. 406, 413, 537 S.E.2d 305, 308 (2000) (stating that a manufacturer needs a plant, but that constructing a plant does not make construction the manufacturer’s business); Burroughs, 210 Va. at 99-100, 168 S.E.2d at 108 (gathering material essential for construction of building but does not make material delivery part of construction). Rather the analysis must focus on the nature of the work in question as it relates to the trade, business, or occupation of the general contractor.
This required analysis is based on the underlying rationale for the Act and the exclusivity provision. An employee subject to the Act does not lose his common-law right of action against a stranger to the business, an “other party,” “for the reason that, though the accident may arise out of and in the course of the employment, the dominant cause of the accident is not inherent in the business and is not a loss which the act contemplates that the industry should ultimately bear.” Feitig, 185 Va. at 99, 38 S.E.2d at 74 (emphasis added).
An example of the application of this rationale is seen in Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957). In that case, a general contractor contracted to build a school building for the city of Norfolk. In constructing the building, the general contractor was required to *530 hoist certain steel trusses and attach them to the top of 30-foot high columns. Raising the trusses was work required of the general contractor, and, since the contractor’s “equipment on the job was not capable of lifting these trusses,” the general contractor had to rent a crane and crew to perform this work. 198 Va. at 713, 96 S.E.2d at 93. An employee of the general contractor was killed when a truss, dislodged by the crane, fell on him.
The work of the general contractor was to construct the building and, to do so, it had to raise the trusses. Thus, in performing this work, the subcontractor in Rea was “engaged in an essential part of the work which the principal contractor had to do.” Id. at 717, 96 S.E.2d at 96. The risk of injury from this work was inherent in the work of the general contractor and one borne as a cost of doing business by the general contractor.
In this case, the business of the general contractor White was to repair and replace brick masonry. White’s vice president and project manager, Johnny L. Powers, testified that White did not have the technical capacity to install multi-level scaffolding of the type provided by Safway. However, when asked if White could have performed its work without the scaffolding provided by Safway, Powers testified that, in several instances during the project, Safway did not have scaffold decks in areas in which White’s workers needed to work and White constructed its own system “like window washers use on [a] high-rise” to provide access to the brick wall above ground level. Thus, while White did not erect the type of scaffolding provided by Safway, White considered access to its renovation activities in areas above ground level as a part of its work and, in fact, on occasion, provided a system for that purpose. The risk of injury from providing such access was inherent in the work of the general contractor and, accordingly, was a cost of doing business by White.
Providing access to the brick masonry was part of White’s work and, when Safway provided such access through a system of scaffolding, it was performing part of the trade, business, and occupation of White. Therefore, Peck is limited to the remedies available under the Workers’ Compensation Act for injuries suffered as a result of the negligence of Safway’s employees.
For these reasons, I concur in the result reached by the majority.