# Edward T. Whalen

## v.

# Dean Steel Erection Company, Inc.

Record No. 820541

Decided March 8, 1985, at Richmond

Present: All the Justices

James A. Eichner (Gary W. Kendall; Beale, Eichner, Wright, Denton & Shields; Michie, Hamlett, Donato & Lowry, on briefs), for appellant.

Thomas G. Bell, Jr. (Timberlake, Smith, Thomas & Moses, P.C., on brief), for appellee.

Amicus Curiae: Ashcraft & Gerel (Lawrence J. Pascal, on brief), for appellant.

RUSSELL, J., delivered the opinion of the Court.

This appeal turns upon the question whether a general contractor's employee may bring a tort action against a subcontractor for personal injuries caused by the subcontractor's negligence on the job. The subcontractor contends that such an action is barred by the Worker's Compensation Act.

The facts are undisputed. The Kroger Company desired to erect a grocery store building in Charlottesville. Kroger engaged Pinkerton and Laws Company as general contractor for the work. Pinkerton and Laws subcontracted the structural steel work to Dean Steel Erection Company, Inc., by a subcontract which provided that Dean Steel was to do "a complete job of steel erection" for the building.

Edward T. Whalen was a carpentry foreman employed by Pinkerton and Laws, the general contractor. On April 25, 1980, the date of his injury, he was working at the construction site, engaged in fabricating wooden forms into which concrete would be poured. His crew was responsible for installing reinforcing steel and pouring concrete into the forms when completed. Whalen's crew also set "anchor bolts" in the concrete, to which vertical steel columns would later be attached.

On the date of the accident, Whalen's carpentry crew, Dean Steel's crew, and the crew of a masonry subcontractor were working simultaneously inside the structure. The masonry walls were partially completed. Dean Steel's crew had erected some of the vertical columns and had placed on top of them fifteen of the nineteen horizontal steel girders which were ultimately to span the top of the structure from wall to wall. Dean Steel had stored the remaining four girders, which were about fifty feet long and five feet deep, inside the building. They rested on wooden supports which had been placed on the ground by Dean Steel's crew.

Whalen was seriously injured when one of these girders "fell over," striking both his legs.

Whalen applied for and received benefits under the Worker Compensation coverage carried by his employer, Pinkerton and Laws. While receiving disability benefits, he brought this action against Dean Steel, contending that its negligence was the proximate cause of his injuries. Dean Steel filed a special plea, asserting that Whalen's sole remedy was under the Workers' Compensation Act. After hearing evidence, the court sustained the plea, finding that Dean Steel was "participating in the trade, business or occupation" of Pinkerton and Laws at the time of the injury, and that this action was therefore barred by the Workers' Compensation Act. On appeal, Whalen contends that the employee of a general contractor is not barred from suit against a subcontractor for the latter's negligence on the job, and that a construction of the Workers' Compensation Act that would so bar him is unconstitutional.

We have considered the underlying question in many cases. The test to be applied was most recently set forth in *Stewart* v. *Bass Constr. Co.*, 223 Va. 363, 288 S.E.2d 489 (1982).

> Code § 65.1-40 states that the rights and remedies granted under the Workmen's Compensation Act "shall exclude all other rights and remedies" of an employee to recover for an injury received during the course of his employment. Code § 65.1-41 provides, however, that an employee can maintain an action at law against the person causing his injury, provided such person is an "other party." Our task is to determine whether Bass was an "other party."
>
> The test to be applied in the present case was first stated in *Feitig* v. *Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946). There we said that in order to maintain a common law action the defendant had to be a stranger to the trade, occupation, or business in which the plaintiff was involved. This test has been restated and applied numerous times. *See, e.g., Stout* v. *Onorati*, 221 Va. 143, 267 S.E.2d 154 (1980); *Bosher* v. *Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966); *Rea, Administratrix* v. *Ford*, 198 Va. 712, 96 S.E.2d 92 (1957); *Sykes* v. *Stone & Webster Eng. Corp.*, 186 Va. 116, 41 S.E.2d 469 (1947). Its application depends upon the facts and circumstances of the particular case. *Bassett Furniture*

v. *McReynolds*, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976).

*Id.* at 365, 288 S.E.2d at 490.

*Rea, Administratrix* v. *Ford*, cited in *Stewart*, is factually similar to the present case. An employee of a general contractor engaged in the construction of a school building was killed by a falling steel truss which was being hoisted by a subcontractor's employee. The subcontractor was engaged for the purpose of providing the necessary crane and crew to lift the steel trusses into place. We affirmed the trial court's judgment striking the evidence of the decedent's personal representative in a common-law action against the subcontractor, on the ground that such an action was barred by the Workmen's Compensation Act. The result followed from the fact that the subcontractor was no stranger to the employment and the work. We said:

> In the present case Ford, [the subcontractor], was no stranger to the business of Daniel, the principal contractor. On the contrary, in furnishing the equipment and crew for the purpose of erecting the steel structure Ford was a subcontractor engaged in an essential part of the work which the principal contractor had to do. Thus he was not an "other party" within the meaning of Code, § 65-38 [now Code § 65.1-41]. Like the principal contractor, Ford was under the canopy of the Workmen's Compensation Act and not subject to an action at law for damages for injury to or death of Rea who was engaged in the same work.

198 Va. at 717, 96 S.E.2d at 96.

The "stranger to the work" test, applied to varying facts, necessarily produces varying results. Thus, in *Hipp* v. *Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971), and in *Burroughs* v. *Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969), subcontractors were found to be outside the canopy of Worker's Compensation, and therefore subject to suit, because their duties consisted simply of delivering materials to a construction site, without participation in the construction work. But where a subcontractor had mixed duties, some involving mere deliveries of materials and others directly involved in the construction work, we held that he was within the canopy of Worker's Compensation, and not subject

to an action for negligence at the hands of an employee of the general contractor.

In *Bosher* v. *Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), an employee of a general contractor engaged in the construction of an industrial building was injured when struck by a truck operated by the employee of a subcontractor engaged in hauling sand to the construction site. Although the plaintiff had recovered Worker's Compensation benefits from his employer, the general contractor, he sued the subcontractor for negligence. The trial court overruled the subcontractor's plea in bar, and the plaintiff recovered a judgment. We reversed and entered final judgment for the subcontractor because his duties included not only hauling sand to the construction site and dumping it there, but also spreading it inside the foundation area to establish a sand base six inches deep. The latter activity, we held, was "part of the trade, business or occupation" of the general contractor. The subcontractor was, therefore, no stranger to the general contractor's work and not an "other party" within the meaning of Code § 65-38 (now Code § 65.1-41). As a consequence, the plaintiff's remedy was limited to Worker's Compensation. *Id.* at 542-43, 151 S.E.2d at 377-78.

It is clear from a comparison of these precedents that the rule of *Feitig* v. *Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946), has become firmly fixed in Virginia. It requires that the facts of each case be analyzed to determine whether the defendant in a common-law action was, at the time of the plaintiff's injury, a stranger to the work in which the plaintiff was engaged. If the defendant was "no stranger," then he was not an "other party" within Code § 65.1-41, and the common-law action against him is barred by Code § 65.1-40. There is no clearer illustration of this principle than the case of a subcontractor who has undertaken to perform a fraction of the construction work for which a general contractor has overall responsibility.

Here, as in *Rea*, the defendant was a subcontractor engaged in an essential part of the work which the general contractor had to do. Dean Steel was no stranger to the work in which Whalen's employer was engaged, but was, on the contrary, performing an essential part of it. Dean Steel was, therefore, under the canopy of the Worker's Compensation Act when Whalen was injured, and the trial court correctly ruled that this action was barred.

■ Whalen, however, conceding that the "stranger to the work" test pervades our previous holdings, contends that a competing and better-reasoned test is found in *Southeastern Tidewater Auth.* v. *Coley*, 221 Va. 859, 275 S.E.2d 589 (1981), based upon *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). This test, the argument continues, depends not on whether the subcontractor is a stranger to the work, but rather upon whether the subcontractor's activity is one normally carried out by the owner or general contractor through employees, instead of one customarily entrusted to a subcontractor. Whalen misapplies these authorities. *Southeastern, Shell Oil,* and *Bassett* stand in a line of cases beginning with *Sykes* v. *Stone & Webster Eng. Corp.*, 186 Va. 116, 41 S.E.2d 469 (1947), which consider whether a subcontractor's employee, injured by a general contractor's (or owner's) negligence on the job, may sue such general contractor or owner at common law or whether such general contractor or owner has become the statutory employer of the plaintiff under Code §§ 65.1-29, 65.1-30, or 65.1-31, or their predecessors. These statutory employer cases present a question which is the obverse of the one presented here, and their rule is inapplicable where a general contractor's employee seeks to sue a subcontractor. Professor Arthur Larson, quoted in *Shell Oil*, makes the distinction clear: "The test *(except in cases where the work is obviously a subcontracted fraction of a main contract)* is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors." *Shell Oil*, 212 Va. at 722, 187 S.E.2d at 167 (quoting 1C A. Larson, The Law of Workmen's Compensation § 49.12 at 9-53 (1982)) (emphasis added).

■ Whalen tacitly admits that this case is controlled by *Rea, Administratrix* v. *Ford*, if that authority is followed, but argues that the holding in that case was faulty on constitutional grounds, and that any construction of the Workers' Compensation Act which deprives him of the right to sue a subcontractor denies him due process, equal protection of the laws, and the right of trial by jury. We do not agree. In adopting the Compensation Act, the legislature provided for the payment of statutory compensation to workers for injuries arising out of and in the course of the employment. The claimant is relieved of the necessity of proving negligence and proximate cause. He is also relieved of any need to re-

sist such affirmative defenses as contributory negligence and assumption of the risk. In exchange, the law relieves the employer of exposure to actions at law from employees sustaining such injuries. Many cases, weighing this *quid pro quo*, have held it to be a fair exchange, beneficial to employer, employee and society at large, and in itself sufficient to satisfy constitutional requirements. *See, e.g., New York Central R.R. Co.* v. *White*, 243 U.S. 188 (1917); *Northern P. Ry.* v. *Meese*, 239 U.S. 614 (1916); *Bergen* v. *Fourth Skyline Corporation*, 501 F.2d 1174 (4th Cir. 1974); *Haynes* v. *James H. Carr, Inc.*, 427 F.2d 700 (4th Cir.) *cert. denied*, 400 U.S. 942 (1970). *See also Fauver* v. *Bell*, 192 Va. 518, 65 S.E.2d 575 (1951); *Humphrees* v. *Boxley Bros. Co.*, 146 Va. 91, 135 S.E. 890 (1926).

■ Whalen contends that this case differs from the statutory employer cases in that Dean Steel had no obligation to pay him workers' compensation benefits because it was neither his employer nor his statutory employer, and that Dean Steel should not, therefore, be entitled to the constitutionally-sanctioned *quid pro quo* of immunity from suit. We do not agree. The *quid pro quo* which protects the Compensation Act from constitutional attack is of larger dimensions. It is a societal exchange, benefitting all employers and all employees who stand together under the canopy of the Compensation Act. Its effect is to guarantee compensation to all injured workers under the canopy and to bar common-law suit against all employers also thereunder. As long as the injured worker has recourse to compensation from his own employer, or a statutory employer, he has the benefit of the *quid pro quo* upon which the compensation scheme is based, and it is immaterial whether he would have been entitled to claim compensation from other employers who are also under the canopy of the Act. Accordingly, we conclude that the result reached by the trial court did not infringe Whalen's constitutional rights.

The judgment appealed from will be

*Affirmed.*