Gerald Anderson

v.

George Dillow et al.

September 13, 2000

Case No. (Law) L99-869

BY JUDGE CHARLES E. POSTON

Today the court grants the defendants' motion to dismiss this negligence action because the plaintiff's exclusive remedy is available under the Virginia Workers' Compensation Act.

The plaintiff is an employee of a general contractor, Virginia International Terminals ("VIT"). He brought a negligence action against the defendants for injuries he received in a vehicle accident with the defendant George Dillow, an employee of defendant subcontractor Waste Management. As a result of his injuries suffered in the accident, plaintiff filed a Workers' Compensation claim against VIT that has been subsequently settled. Defendant asserts that the Virginia Workers' Compensation Act bars plaintiff's common law action for personal injury because Waste Management is not an "other party" within the meaning of the Act.

The term "other party" is found in Va. Code § 65.2-309(A) (formerly § 65.1-41). That section provides, in pertinent part:

A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the

> injured employee or his personal representative, the legal liability of such other party.

Va. Code Ann. § 65.2-309 (Michie 1995).

Although this section speaks only of the employer's right to enforce his employee's claim against the "other party," the Supreme Court has held under a prior statute, that its provisions preserve the employee's right to maintain an action against an "other party" even if he has accepted benefits under the Act. *See e.g., Feitig v. Chalkley,* 185 Va. 96, 38 S.E.2d 73 (1946). Thus, the only remaining question is whether Waste Management is such an "other party."

The plaintiff cites to federal cases or *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972), and its progeny and other cases decided under Va. Code § 65.1-41 in which the Supreme Court had to determine whether an owner or general contractor was the "statutory employer" of a subcontractor's employee. In those types of cases, the test is whether the work being performed by the injured employee is activity which, in that business, is "normally carried on through employees rather than independent contractors," or, though not normally performed by employees, whether the work is part of the overall trade, business, or occupation of the owner or general contractor. *Id.* at 722. Those cases can generally be classified as "ascending" cases, in which an employee seeks to recover from a party above his actual employer, *e.g.,* a subcontractor suing a contractor or owner.

On the other hand, a different line of cases decided under Va. Code § 65.1-41 that can be classified generally as "descending" cases, involve situations in which an employee of an owner or general contractor attempts to sue a subcontractor, a party below such employee's actual employer. In those cases, the Supreme Court has held that the "statutory employee" test is inapplicable. Instead, the relevant inquiry is whether the defendant is a "stranger to the trade, occupation, or business in which the plaintiff was involved." *Stewart v. Bass Const. Co.,* 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982).

The distinction between "ascending" and "descending" cases was explained in *Whalen v. Dean Steel Erection Co.,* 229 Va. 164, 327 S.E.2d 102 (1985), *appeal dismissed,* 44 U.S. 802, 106 S. Ct. 33 (1985). The plaintiff worked for a general contractor and was injured by the subcontractor's employee. *See id.* at 166, S.E.2d at 103-04. The plaintiff asked the Supreme Court to apply the *Shell Oil* test rather than the "stranger to the work" test. *See id.* at 170, 327 S.E.2d at 105-06. The Supreme Court refused and clearly distinguished the tests to be applied in "ascending" cases from those to be applied in "descending" cases:

Whalen, however, conceding that the "stranger to the work" test pervades our previous holdings, contends that a competing and better-reasoned test is found in *Southeastern Tidewater Auth. v. Coley*, 221 Va. 859, 275 S.E.2d 589 (1981), based upon *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). This test, the argument continues, depends not on whether the subcontractor is a stranger to the work, but rather upon whether the subcontractor's activity is one normally carried out by the owner or general contractor through employees, instead of one customarily entrusted to a subcontractor. Whalen misapplies these authorities. *Southeastern*, *Shell Oil*, and *Bassett* stand in a line of cases beginning with *Sykes v. Stone & Webster Eng'g Corp.*, 186 Va. 116, 41 S.E.2d 469 (1947), which consider whether a subcontractor's employee, injured by a general contractor's (or owner's) negligence on the job, may sue such general contractor or owner at common law or whether such general contractor or owner has become the statutory employer of the plaintiff under Code §§ 65.1-29, 65.1-30, or 65.1-31, or their predecessors. These statutory employer cases present a question which is the obverse of the one presented here, and their rule is inapplicable where a general contractor's employee seeks to sue a subcontractor. Professor Arthur Larson, quoted in *Shell Oil*, makes the distinction clear: "The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors." *Shell Oil*, 212 Va. at 722, 187 S.E.2d at 167 (quoting 1C A. Larson, *The Law of Workmen's Compensation*, § 49.12 at 9-53 (1982)) (emphasis added).

*Id.* at 170-71, 327 S.E.2d at 106. The Court further explained that, "There is no clearer illustration of this principle than the case of a subcontractor who has undertaken to perform a fraction of the construction work for which a general contractor has overall responsibility." *Id.* at 169, 327 S.E.2d at 105. It is clear, then, that the "stranger to the work" test, and not the "statutory employee" test, must control the court's decision in the case at bar. Thus, if Waste Management were engaged in the trade, business, or occupation of VIT, plaintiff cannot proceed with his action here.

VIT is a non-profit, non-stock corporation that entered into a Service Agreement with the Commonwealth of Virginia to operate Norfolk International Terminal ("NIT") for the Commonwealth. NIT is a commercial

port whose operations include loading and handling commercial freight, storing commercial freight in warehouses, breaking down freight from shipping containers, removing shipping material from freight, and general maintenance of port facilities. VIT is required to operate and maintain NIT so that commercial traffic can be accommodated in a clean, safe, and orderly manner, and thus must ensure that shipping debris and other generated waste is removed from NIT. VIT has two options with regard to removing debris and waste from NIT: removal by using its own employees or by subcontracting the work out to another company. It has chosen the latter option, and, in 1986, VIT entered into a contract with Service Disposal Corporation for solid waste removal and disposal. In 1988, Waste Management, acquired Service Disposal Corporation and thereby assumed those contractual responsibilities.

The plaintiff cites, among others, a circuit court case brought by an employee of Powhatan Correctional Facility ("P.C.C") against these same defendants, Waste Management. *Marshall v. Langford*, 48 Va. Cir. 445 (1999). The plaintiff in *Marshall* was a switchboard operator who was injured by a truck driven by a Waste Management employee. The *Marshall* court acknowledged that cases like the instant action must be decided on their own merits with respect to determining whether particular defendants or employers are strangers to the trades, occupations, or businesses of plaintiffs. *See id.* *Marshall* treats the "collection of trash" as analogous to the "delivery of materials," and draws a line to determine who is an "other party" for purposes of the Virginia Workers' Compensation Act at the place where the trash is picked up. The analysis in *Marshall* can be limited to the facts of that case and similar cases in which trash collection and pickup could be deemed merely incidental to a contractor or owner's business. Such is not the case here.

The facts here are analogous to the facts in *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985), where an forklift driver employed by Ford was injured loading parts and machinery onto a trailer owned by the defendant contractor. Ford contracted with Turner's Express to haul Ford's machinery between plants. The court reasoned that "transporting machinery and parts from one plant to another was an essential element of Ford's business," and held that the contractor was engaged in Ford's trade, business, or occupation and was not an "other party" the plaintiff could sue. *Id.* at 559, 331 S.E.2d at 455.

VIT could not reasonably be able to operate the NIT in a clean, safe, and orderly manner unless the premises were kept free of the large quantities of shipping debris and waste generated on a daily basis. This necessitated collecting the debris and removing it from the NIT to the landfill. At the time of the accident in the instant case, VIT was responsible for collecting the

shipping debris and waste generated by the operations and maintenance functions throughout the terminal compound and depositing the materials into containers. VIT could have chosen to continue that effort to completion by conducting its own operations to remove the collected debris and waste and transport it to the landfill, assigning and using its own employees and purchasing and operating its own equipment. VIT instead chose to subcontract to Waste Management the final part of VIT's own responsibility to keep the premises free of debris and waste. Waste Management's actions in removing the collected shipping debris and waste from the port and transporting it to the landfills were thus a continuation and extension of VIT's effort to operate and maintain the port in the clean, safe, and orderly manner required by its contract with the Commonwealth. VIT's obligation for fees Waste Management incurred as a result of disposing shipping debris and waste at landfills underscores VIT's overarching responsibility for maintaining and operating NIT. Under these circumstances, removing debris and waste cannot be deemed merely incidental to the operation and maintenance of a major port facility; to the contrary, it is an essential and indispensable part of that business. Waste Management, therefore, cannot be considered a stranger to VIT's trade, business, or occupation, and as such, Waste Management cannot be considered an "other party" under Virginia's Workers' Compensation Act. The plaintiff's exclusive remedy for his accidental injury must lie within the Act.

The defendant's motion to dismiss is granted, and the plaintiff's claim is dismissed with prejudice.